UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALICE WILLIAMS O/B/O J.J.W.,

                         Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                      15-CV-144S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

          1.     Plaintiff Alice Williams challenges an Administrative Law Judge's ("ALJ")

decision dated May 30, 2013, wherein the ALJ determined that Plaintiff's minor nephew,

J.J.W. ("JJW"), is not disabled within the meaning of the Social Security Act ("the Act").

Plaintiff now contends that this determination is not based upon substantial evidence,

and remand is warranted.

          2.     On August 16, 2010, Plaintiff filed an application for Supplemental

Security Income ("SSI") on behalf of JJW, who was then seven, claiming he had been

disabled since January 1, 2006.  The claim was initially denied on December 20, 2010.

Plaintiff thereafter requested a hearing before an ALJ, and, on January 31, 2012,

Plaintiff appeared and testified in Buffalo, NY.  During that hearing, Plaintiff amended

the alleged onset date to August 16, 2010.  The ALJ subsequently found on August 28,

2013, that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff filed an administrative appeal and the Appeals Council denied Plaintiff's request

for review on December 19, 2014, rendering the ALJ's determination the final decision

of the Commissioner.  Plaintiff filed the instant action on February 17, 2015.

3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 5, 11).  Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5.      To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's

2

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      Under the Social Security Act, an individual under the age of 18 is entitled to SSI benefits when he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations set forth a three-step sequential process the ALJ must follow in evaluating SSI claims for minor children. See 20 C.F.R. § 416.924. First, the ALJ must determine whether the child has engaged in substantial gainful activity. If so, the child is ineligible for SSI benefits. 20 C.F.R. § 416.924(b). If the child has not engaged in substantial gainful activity, the second step requires an evaluation of whether the child suffers from an impairment or combination of impairments that cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c). If the child's impairment is severe, the ALJ then must determine whether it meets or equals the criteria of an impairment found in the listings at 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (the "Listings"). If the impairment meets or

equals one of the Listings, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1).

7.      If the ALJ determines that the child's impairment or combination of impairments does not meet or equal any Listing, the ALJ must then assess whether the child's impairment(s) "functionally equal" the Listings by considering how the child functions in terms of the following six "domains":

(i) acquiring and using information;

(ii) attending and completing tasks;

(iii) interacting and relating with others;

(iv) moving about and manipulating objects;

(v) caring for oneself; and

(vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). A finding of disability is warranted if a "marked" limitation is found in any two of the listed domains, or an "extreme" limitation in a single domain. 20 C.F.R. § 416.926a(a); see Ramos v. Barnhart, No. 02 Civ. 3127, 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003). A "marked" limitation exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

8.      Applying the sequential evaluation in the instant case, the ALJ found: (a) JJW had not engaged in any substantial gainful activity since August 16, 2010 (R. 23);[1] (b) JJW has the severe impairments of "learning disorder not otherwise specified

---

[1] Citations to the administrative record are designated as "R."

4

(NOS); speech and language delays; a language production disorder, severe; language comprehension disorder, moderate; and borderline Intellectual functioning" (id.); (c) JJW did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (id.); and (d) JJW did not have an impairment or combination of impairments that functionally equaled the severity of the listings (R. at 31).

9.      Plaintiff advances two challenges to the ALJ's decision.  First, Plaintiff contends that JJW meets the criteria of listing 112.05(D), the ALJ therefore erred at step three when she chose to analyze JJW's impairments under listing 112.02 instead of 112.05(D).[2]  To meet or equal the criteria of Listing 112.05(D), a child must have "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function."  20 C.F.R. § Pt. 404, Subpt. P, App. 1 §112.05.

JJW's intelligence was evaluated twice during the relevant period.  On November 11, 2010, Dr. Gregory Fabiano, Ph.D., conducted a consultative intelligence examination on behalf of the Administration.  (R. 332.)  He administered the Wechsler Intelligence Scale tor Children, Fourth Edition ("WISC-IV"), and reported that J.J.W. attained a Verbal Comprehension Index of 63, Perceptual Reasoning Index of 86, Working Memory Index of 91, and Processing Speed Index of 112.  (R. 334.)  Dr. Fabiano was unable to assign a Full Scale IQ score due to the significant discrepancy between JJW's Verbal Comprehension Index Score and his other scores.  (R. 334-35.) On October 21, 2011, Maria Monaco, a school psychologist, conducted a Psychological

---

[2] Plaintiff does not contend that the step three finding of no disability under Listing 112.02 was not supported by substantial evidence, only that the ALJ should have instead proceeded under 112.05(D).

Evaluation of JJW and a second WISC-IV IQ test.  (R. 366-68.)  Dr. Monaco reported JJW to have a verbal IQ of 71, a perceptual IQ of 86, a working memory IQ of 86, a processing IQ of 86, and a full scale IQ of 76, placing him "within the borderline range of overall intellectual ability."  (R. 367.)

Plaintiff maintains that because the Verbal Comprehension Index of 63, assigned by Dr. Fabiano, is within the range specified in the first part of the 112.05(D) criteria, and because JJW has a severe impairment other than borderline intellectual functioning (R. 23), JJW should have been found to meet the 112.05(D) Listing at step three.  She contends that the ALJ improperly refused to apply 112.05(D) because JJW was diagnosed with intellectual functioning commensurate with "borderline intellectual functioning" as opposed to "mental retardation."  (See R. 24, 30.)  Plaintiff misconstrues the ALJ's reasoning.

"The ALJ is solely responsible for weighing the medical evidence and resolving material conflicts."  Atwater v. Astrue, No. 10-CV-420S, 2012 WL 28265, at *4 (W.D.N.Y. Jan. 5, 2012), aff'd, 512 F. App'x 67 (2d Cir. 2013) (citing Richardson, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict.")).  "An ALJ should consider 'all medical opinions received regarding the claimant,'" Yeomas v. Colvin, No. 13-CV-6276P, 2015 WL 1021796, at *15 (W.D.N.Y. Mar. 10, 2015) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)), and it is "well within [the discretion of the ALJ] to credit the opinions of certain" medical opinions over others.  See Talavera v. Astrue, 500 F. App'x 9, 12 (2d Cir. 2012) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the

Commissioner to resolve.")).  "Moreover, when evaluating opinion evidence, an ALJ examines the consistency of the testimony and '[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.'" Porter v. Colvin, No. 14-CV-547S, 2016 WL 1084162, at *7 (W.D.N.Y. Mar. 21, 2016) (quoting 20 C.F.R. § 416.927(c)(4)).

Here, the ALJ resolved the conflict in IQ scores by giving less weight to Dr. Fabiano's Verbal Comprehension Index score, noting that this outlying score was inconsistent with the remainder of the record:[3]

> With regard to the claimant's cognitive abilities, the Administrative Law Judge gave some, but less, weight to the Dr. Fabiano's assessment than to Ms. Monaco's test conclusions, as his scoring of the WISC led to a significantly lower verbal score than that achieved by the claimant just months later.  The significant discrepancy between the claimant's verbal score and his performance score on the test that Dr. Fabiano administered resulted in an inability to compute a Full Scale IQ score.  Thus, the large discrepancy in verbal versus performance score, and the discrepancy with the scores the claimant achieved in school testing, at a minimum do not tell the whole story about the claimant's functioning.

(R. 36-27 (internal citations to the Record removed).)  The ALJ ultimately relied on Ms. Monaco's evaluation of a Full Scale IQ of 76—well outside the cut-off for Listing 112.05—to conclude that JJW was more appropriately evaluated under Listing 112.02:

> Based on School Psychologist Maria Monaco's October 2011 testing of the claimant, the claimant obtained a Full Scale IQ score of 76.  This score, considered in light of the claimant's other test scores for the period now at issue and other comments by evaluating psychologists, does not establish a diagnosis of mental retardation but of borderline intellectual functioning, which is properly evaluated under listing 112.02.

---

[3] Plaintiff argues that the ALJ's weight assessment was improper, and that she discounted Dr. Fabiano's score simply because it was lower.  However, as discussed herein, the ALJ properly exercised her discretion to give less weight to the score because it was inconsistent with, and not supported by, the remainder of the record.

(R. 30.)  Although she notes that none of JJW's evaluating sources "diagnosed mental retardation" (R. 31), she ultimately relies on the scores themselves as her basis for finding JJW's impairments to be properly evaluated under 112.02 rather than 112.05.

Consequently, this Court finds that the ALJ afforded proper weight to the medical evidence contained in the record and properly performed her duty to weigh all of the medical evidence and resolve any material conflicts.  See Richardson, 402 U.S. at 399. Under the circumstances of this case, the ALJ was not required to credit Dr. Fabiano's verbal IQ assessment over that of the other examiner.  Lawler v. Astrue, No. 3:09-CV-1405 GLS, 2012 WL 177956, at *2 (N.D.N.Y. Jan. 23, 2012), aff'd, 512 F. App'x 108 (2d Cir. 2013) (ALJ properly discounted opinion evidence as to IQ "because it was inconsistent with other evidence in the case").  Accordingly, the ALJ committed no error at step three.

10.    Second, Plaintiff contends that, because the inconsistencies in the record suggest improvement in JJW's condition, the ALJ erred in failing to consider a closed period of benefits.  If a claimant is disabled at any point in time, the ALJ should consider "not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of his claim."  Pena v. Barnhart, No. 01 CIV. 502 (BSJDF), 2002 WL 31487903, at *12 (S.D.N.Y. Oct. 29, 2002) (citing 42 U.S.C. § 1382c(a)(3)(A), 42 U.S.C. § 423(d)(1)(A)); see also Stalling v. Colvin, No. 11-CV-779, 2013 WL 3713315, at *6 (W.D.N.Y. July 12, 2013) ("Thus, if an individual is unable to engage in substantial gainful activity for a period of more than 12 months due to an impairment or combination of impairments, the individual is entitled to a closed period of

disability."). Therefore, "[i]n determining whether Plaintiff is entitled to disability benefits, it is also necessary to consider every period during which [a claimant] may have been disabled." Id.  The ALJ did not fail in this duty here.

In addition to the inconsistency in JJW's IQ scores, there is also a significant discrepancy among the reports provided by JJW's teacher, Ms. Leesha Jacobs.  In Ms. Monaco's Psychological Evaluation, dated October 21, 2011, she noted that Ms. Jacobs had reported "no significant academic or behavioral concerns" regarding JJW, that he "continues to make meaningful progress within the general educational classroom and curriculum," and that he "is a friendly cooperative student, and often enjoys being a 'helper.'"[4]   (R. 366.)   This is in stark contrast with Ms. Jacobs' own report, dated December 2, 2011, wherein Ms. Jacobs reported that JJW had numerous "very serious" problems that occurred on an hourly basis in the areas of attending and completing tasks, interacting and relating with others, and caring for himself.   (R. 276-83.) However, in Ms. Jacobs' second evaluation, dated February 5, 2013, she did not indicate any "very serious" or even "serious" problems in these areas, except with "Handling frustration appropriately," which she indicated is a "serious problem" occurring on a weekly basis.  (R. 284-93.)

These reports and scores do not present a timeline clearly demonstrating a period of disability followed by improvement, which might therefore compel the ALJ to consider an award of a closed period of benefits.   In particular, Ms. Jacobs initial evaluation in December 2011 is so inconsistent with her own reports to Ms. Monaco just a few weeks earlier that the ALJ elected not to afford the evaluation significant weight.

---

[4] Ms. Monaco also reported, based on her own classroom observations, that JJW "was observed working quietly in his seat" and "appropriately interacting with all those around him;" she did not observe any behavioral problems.  (R. 367.)

As the ALJ noted:  "The Administrative Law Judge gave Ms. Jacobs' opinions some weight as to some domains, but no significant weight as to others, depending on how consistent they were with each other and with the record as a whole, and how well they were supported by the record as a whole."  (R. 33.)  In some instances, the ALJ thought that the discrepancies between Ms. Jacobs' two reports might be "attributable to the claimant's progress in maturation and development of attention and comprehension skills" (R. 39; <u>see also</u> R. 41), but, based on the record as a whole, there was no error in giving less weight to the December 2011 report and finding that substantial evidence did not support a finding that JJW was disabled at any time during the relevant period.  In other words, although JJW's condition may have improved, there is no error in finding that the condition improved from was not disabling.  Therefore, because there is substantial evidence indicating that JJW was not disabled during any period, the ALJ was correct not to consider a closed period of benefits.

11.    For the foregoing reasons, and upon a review of the record as a whole, this Court concludes that the ALJ's determination is supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:  May 27, 2016
        Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge